459 So.2d 288 (1984)
Guy B. HARVEY and Joseph A. Harvey
v.
Louis Valley MEADOR.
No. 54351.
Supreme Court of Mississippi.
November 7, 1984.
*290 Ronnie L. Walton, Williams, Glover & Walton, Meridian, for appellants.
Thomas J. Lowe, Jr., Jackson, J.C. Martin, Jr., Waynesboro, for appellee.
Before BOWLING, DAN M. LEE, PRATHER and SUGG,[1] JJ.
PRATHER, Justice, for the Court:
This appeal addresses the appropriate legal standard to be applied when appointment of a conservator is sought. Guy B. Harvey and his brother, Joseph A. Harvey, petitioned for their appointment as co-conservators of the estates of their four elderly uncles. The Chancery Court of Wayne County dismissed the petitions, and the Harveys appeal to this Court.
The assignment of error is that the chancellor's findings were manifestly wrong and against the overwhelming weight of the evidence.

I.
The appellees in this case are four unmarried elderly brothers who reside in Wayne County, MS. At the time of the hearing, Joe Meador was 93 years of age, Alec McCain Meador was 89 years old, Louis Valley Meador was 82 years old, and William Allen Meador was 80 years old. Subsequent to the filing of this appeal, Joe, Alec, and William died. The deceased Meadors' only living relatives are their brother Louis, their sister Ruth Meador Harvey, and her three children. Two of these children, Guy B. Harvey and Joseph A. Harvey, are the appellants.
Each of the Meador brothers owns several hundred acres of land in Wayne County, MS. In addition, each owns an undivided one-eighth interest in 320 acres of farm and timber land in Kentucky. In April of 1982, Colon F. Bazor, Sam Kennedy, Jr., and Norman Triggs purchased the Meadors' interest in the Kentucky property at the price of $5,000.00 to each of the four brothers, roughly $135.00 per acre. At trial, the farmer who rents the property testified that the land was worth between $800.00 and $1,000.00 per acre.
All of the Meador brothers have been plagued by health problems. Joe was essentially blind and suffered from senile dementia. William suffered from chronic heart disease and, because of inability to manage his medicine, suffered periodically from digoxin toxicity. Alec also had trouble administering his medicine; in April of 1982, he was admitted to an intensive care unit for eleven days because of excessive levels of digitoxin.
Louis Meador lives alone in a shabby house without electricity or running water. He keeps the windows boarded up because of his fear that people might break in.
The Meador brothers are represented in this action by J.C. Martin. Martin represented Bazor, Kennedy and Triggs in the purchase of the Kentucky property. According to Kennedy, he and Bazor were sharing the legal fees of J.C. Martin in opposing the conservatorship.
At the trial Louis Meador testified that Attorney J.C. Martin was not his lawyer. *291 When shown a letter of employment to Mr. Martin, Louis said he didn't know what it was. When shown the answer filed in his behalf in this action, Louis said he believed it to be a lease on the land in Kentucky.
Billy Meador testified that he didn't know how much property he owned in Kentucky, and he had no idea what it was worth. He said that he thought that all he had sold was a power line easement across the Kentucky property.
Upon the chancellor's finding that "the evidence was not sufficient to establish the need for a conservator for either [sic] of these four elderly gentlemen," the petition for the appointment of conservators was dismissed.

II.
A conservator for the management of property may be appointed by the chancery court of the county of the residence of any person who "by reason of advanced age, physical incapacity, or mental weakness is incapable of managing his own estate." Additionally, "if the court deems it advisable," the conservator may have charge and custody of the person as well as the property. Miss. Code Ann. § 93-13-251 (1972). To make the determination of need for such an appointment, the "chancery judge shall be the judge of the number and character of the witnesses and proof to be presented, except that there shall be included therein at least two (2) reputable physicians... ." Miss. Code Ann. § 93-13-255 (1972). The physicians must be authorized to practice medicine in this state and "shall have had at least three years actual practice and made a personal physical and mental examination of the party. Miss. Code Ann. § 93-13-255 (1972).
The statute specifies that a conservator of the estate may be appointed by reason of (1) advanced age, (2) physical incapacity, or (3) mental weakness, any of which three factors have rendered the person incapable of managing his own estate. In absence of a statutory definition of these three conditions, this Court first addresses the interpretation of the legal standard to be applied.

III.
Initially, it is appropriate to distinguish guardianships from conservatorships.
Guardians may be appointed for minors, Miss. Code Ann. § 93-13-15 (1972); or incompetent adults, Miss. Code Ann. § 93-13-121 (Supp. 1983); a person of unsound mind, Miss. Code Ann. § 93-13-123, 125 (1972); alcoholics or drug addicts, Miss. Code Ann. § 93-13-131 (1972); convicts in the penitentiary, Miss. Code Ann. § 93-13-135 (1972); persons in the armed forces or merchant seamen reported as missing, Miss. Code Ann. § 93-13-161 (1972); or for veterans entitled to receive moneys from United States Veterans' Bureau, Miss. Code Ann. § 35-5-5 (1972) or minor wards of a veteran, Miss. Code Ann. § 35-5-7 (1972).[2] The guardian is the legally recognized custodian of the person or property of another with prescribed fiduciary duties and responsibilities under court authority and direction. A ward under guardianship is under a legal disability or is adjudged incompetent.
In recent decades there has been an increased number of older adults in our society who possess assets in need of protective services provided through guardianships. But modification of laws have broadened the definition of persons for whom assistance can be afforded by the courts, and such statutes do not restrict such protection only to the adult incompetent or insane.
Noting that trend in our society, the Mississippi Legislature incorporated into law in 1962 the conservatorship procedure for persons who, by reason of advanced age, physical incapacity, or mental weakness, were incapable of managing their own estates. Miss. Code Ann. § 93-13-251, et seq. (1972).
Thus the Legislature provided a new procedure through conservatorship for supervision of estates of older adults with *292 physical incapacity or mental weakness, without the stigma of legally declaring the person non compos mentis. This additional procedure was intended to encompass a broader class of people than just the incompetent. See Uniform Probate Code § 5-304 Comment (1975). See also 18 J.Fam.L. 819 (1980). Family Law, Vol. 18, p. 819.
Therefore, the distinguishing feature of conservatorship from guardianships lies in part in the lack of necessity of an incompetency determination or the existence of a legal disability for its initiation. After establishment of such protective procedures, the duties, responsibilities and powers of a guardian or conservator are the same. Miss. Code Ann. § 93-13-259 (1972). See also 51 Miss.L.J. 239, 266 (1980).
However, the status of the ward in each arrangement is different. Lee v. Lee, 337 So.2d 713 (Miss. 1976) (ward under a conservatorship may execute a valid will during lucidity, if possessed of the requisite understanding and mental capacity.)

IV.
Thus the question presented to this Court is the appropriate legal standard to be applied in determining the criteria for appointment of a conservator, a question not previously addressed as applied to the conservatorship statute.
At the outset it should be noted that the standard with which we are concerned is "a legal judgment to be made by the trier of fact." Section 99-13-255 provides that two reputable licensed physicians with three years actual practice, who have personally examined the defendant, shall testify as to medical conditions. The physicians should not, however, testify as to the ultimate legal issue. Likewise, courts interpreting the various state statutes on this issue have recognized that a firm definition of the grounds named within a statute is difficult to enunciate. Rather, the courts generally have avoided prescribing the degree of acumen necessary to manage property, but left that determination to a factual analysis of the particular case based upon clear and convincing evidence.
Regarding advanced age that renders a person incapable of property management, this Court is of the opinion that mere advanced age alone is insufficient. Advanced age will naturally bring about decrease in physical prowess and mental efficiency. However, advanced age which renders an inability to manage property or which advanced age exhibits a serious degree of deterioration is contemplated by the statute.
The fact that physical incapacity exists is not in and of itself sufficient justification for the court taking jurisdiction of property involuntarily. A blind or deaf person may be capable of understanding matters of business and receiving communication on the subject. However, almost complete physical paralysis resulting from a cerebral hemorrhage rendering one incapable of managing the estate would qualify under the statute as physical incapacity. Loss v. Loss, 25 Ill.2d 515, 185 N.E.2d 228 (1962).
Mental weakness, as opposed to the more strict application of mental incompetency, is another statutory standard which also employs some vagueness. Mere lack of good business judgment, not amounting to some degree of wasted or dissipated property, is not a sufficient standard. Mental weakness which renders the subject incapable of understanding and acting within discretion in the ordinary affairs of life is sufficient. See Annot., 9 A.L.R.3d 796 (1966) (and cases cited therein).
This Court adopts a management competency test as the standard to be applied under the conservatorship statute. A test of management competency can be answered by considering the factors of: ability to manage, or improvident disposition, or dissipation of property, or susceptibility to influence or deception by others, or other similar factors.

*293 V.
The next step is to determine whether the evidence by the petitioners was sufficient to establish need for a conservator under a management competency test. We address the only surviving defendant, Louis Meador. The facts previously enumerated establish that Louis, 82 years old at the time of hearing, suffered from advanced age and mental weakness which led to an improvident disposition of property. He lives as a hermit in a boarded-up house without electricity or water, but he did testify at trial. His responses evidenced no understanding of his estate or business. He denied that the attorney who purported to represent him was in fact his lawyer. In fact, attorneys' fees for Meador in this proceeding were paid by persons who had secured the Kentucky land and who would benefit most by the nonappointment. When shown the alleged letter of employment, Louis said he had never read it. When presented with a copy of the answer filed on his behalf opposing the conservatorship, Louis thought it was a lease on the land in Kentucky. Louis was unable to say what his land in Kentucky was worth.
This Court has held on repeated occasions that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed on appeal unless it can be said with reasonable certainty that his findings were manifestly wrong and against the overwhelming weight of the evidence. Richardson v. Riley, 355 So.2d 667 (Miss. 1978). However, this Court has also stated that it would not hesitate to reverse a decree of the chancellor when his decision appears to be manifestly wrong. Scott v. Scott, 219 Miss. 614, 69 So.2d 489 (1954).
In this case we do not evaluate the chancellor's conclusion regarding the three now-deceased brothers as that question is moot. However, this Court holds that the chancellor's finding as to Louis Meador was manifestly wrong and against the overwhelming weight of the evidence. Clearly applying a management competency test to this case, the evidence supports the need for a conservator for Louis Meador. Therefore, we reverse and remand for appointment of a qualified conservator in accordance with Miss. Code Ann. §§ 93-13-251, et seq.

VI.
Comment upon the appellee's opposition is needful. The appellees argue that the chancellor had no choice but to dismiss the petition because the statutory prerequisite for the appointment of a conservatorship was not met. The contention is based upon the qualification of one of the two doctors who testified. It is contended that Dr. Dunbar had not had "at least three (3) years' actual practice ... ." as required by Miss. Code Ann. § 93-13-255.
This point, not addressed to the trial court, was simply not sufficiently developed by the record for this Court to determine. The position is therefore rejected.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Sitting pursuant to Mississippi Code Annotated Section 9-3-6 (Supp. 1982).
[2] This listing does not address temporary guardians, guardians ad litem, or others.