813 So.2d 753 (2001)
In the Matter of the Appointment of a CONSERVATOR OF Gladys Lucille ELDRIDGE: Pat Overton, Lana Goolsby, Henry Grady Eldridge, Kenneth Eldridge and Gladys Lucille Eldridge, Appellants,
v.
Cheryl E. SPARKMAN, Appellee.
No. 2000-CA-01039-COA.
Court of Appeals of Mississippi.
October 16, 2001.
Rehearing Denied January 22, 2002.
Certiorari Denied April 11, 2002.
*754 James W. Kitchens, Margaret P. Ellis, Pascagoula, Jeffrey Lynn Ellis, Attorneys for Appellants.
James D. Spinks, De Kalb, Attorney for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., For The Court:
¶ 1. On June 12, 2000, the chancellor entered an order which appointed Cheryl Sparkman, one of nine living children of Gladys Lucille Eldridge, as the conservator over Ms. Eldridge's person and estate; thereafter, on June 28, 2000, a plan of placement was approved. As a result, Ms. Eldridge was placed in a nursing home. Gladys Lucille Eldridge, as well as four of her other children, feel aggrieved by the chancellor's decision and have filed a timely appeal. They present the following issues: (1) whether the chancellor erred in holding that Mrs. Eldridge needed a conservator, (2) whether it is in the best interest of Mrs. Eldridge to reside in a nursing home, and (3) whether the chancellor committed error when he did not appoint a guardian ad litem to investigate the best interest of Mrs. Eldridge before Mrs. Sparkman was appointed as conservator. While we acknowledge the issues presented, we determine that only issue one is properly before this Court; therefore, we will not address the merits of the other issues. Our review of issue one reveals that it is without merit, and accordingly, we affirm the chancellor's establishment of the conservatorship for Mrs. Eldridge.

FACTS
¶ 2. This case evolves out of a disagreement among several of the children of Mrs. Eldridge regarding how to manage their mother's estate, but more particularly, where their mother should reside. After Mrs. Eldridge suffered what appeared to be a stroke, she was placed in a nursing home. However, Lana Goolsby and Pat Overton testified that when they visited their mother in the nursing home she would request for them to remove her from the nursing home. As a result of their mother's pleas, Mrs. Eldridge was removed her from the nursing home. Thereafter, Mrs. Overton and Mrs. Goolsby shared the responsibility of caring for their mother in each of their homes. As a result of their action, Mrs. Sparkman filed a petition in the chancery court praying for a conservatorship to be established for their mother and requesting the chancellor to appoint her as the conservator.
¶ 3. The record of the clerk's docket reveals that on October 28, 1999, a petition for appointment of conservator was filed. On January 10, 2000, an answer and objection to the petition for appointment of conservator was filed by Mrs. Eldridge and four of her adult children, which included Mrs. Overton and Mrs. Goolsby. On May 5, 2000, the chancellor issued an *755 opinion which appointed Mrs. Sparkman as the conservator of Mrs. Eldridge. On May 15, 2000, a plan of placement for Mrs. Eldridge was filed by Mrs. Sparkman. On June 12, 2000, the chancellor entered a judgment which appointed Mrs. Sparkman the conservator of her mother's person and estate. On June 20, 2000, Mrs. Eldridge and her four children filed a notice of appeal from the June 12, 2000, judgment which appointed Mrs. Sparkman as conservator. On June 21, 2000, they filed an objection to the plan of placement. On June 21, 2000, Mrs. Eldridge and her four children filed a motion to appeal the June 12, 2000, judgment to the supreme court. On June 28, 2000, the chancellor entered an order that directed that pursuant to a medical examination and in consultation with a physician, Mrs. Eldridge should be placed in either the Kemper County Nursing Home or a facility that Mrs. Sparkman, the conservator, deemed appropriate. On December 8, 2000, Mrs. Eldridge filed a motion to reconsider plan of placement, or in the alternative, motion for appointment of guardian ad litem. The brief filed by Mrs. Eldridge indicates that a hearing on the motion was pending at the time her brief was filed with the clerk of the Mississippi Supreme Court.

DISCUSSION

I. WHETHER THE TRIAL JUDGE ERRED IN HOLDING THAT MRS. ELDRIDGE NEEDED A CONSERVATOR.
¶ 4. Before we address the merits of issue one, we first address whether a party may appeal solely on the issue of the naming of a conservator. In Conservatorship of Harris v. King, 480 So.2d 1131, 1133 (Miss.1985), it states: "Because § 93-13-259 states that conservators shall have the same powers, rights and duties as guardians, this statute also governs any appeals by conservators." With this statement in mind, there is a guardian statute that indirectly says that an appeal can be taken from a grant of letters of guardianship. See Miss.Code Ann. § 93-13-19 (Rev. 1994). Therefore, we conclude that an immediate appeal from the naming of a conservator is proper. Having said this, we must also address two additional threshold issues, and will do so in the following order: (1) the limited scope of the notice of appeal and (2) the failure of Mrs. Sparkman, the conservator, to file an appellee's brief.
¶ 5. The issues presented regarding the placement of Mrs. Eldridge and the appointment of a guardian ad litem are not properly before this Court because of the limited scope of the notice of appeal.
¶ 6. The sequence of dates enumerated in the statement of facts reveals that the notice of appeal only pertains to the June 12, 2000 judgment which established the conservatorship. Mississippi Rules of Appellate Procedure 3(c) states that an appellant such as Mrs. Eldridge must "designate as a whole or in part the judgment or order appealed from." Therefore, since Mrs. Eldridge's notice only pertains to the June 12, 2000, judgment, the only issue properly before this Court on appeal is whether a conservatorship should have been established for Mrs. Eldridge. Having resolved this issue, we must address the appellee's failure to file a brief in response to this or any other issues that have been presented in the case at bar.
¶ 7. Generally, failure to file an appellate brief has been viewed as a confession of error and the case would be reversed, unless the appellate court could state with conviction after reviewing the record and brief of the appealing party, that no error existed. See Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997); Jackson v. Walker, 240 So.2d 606, 606 (Miss.1970).
*756 ¶ 8. While failure to file an appellee's brief has previously been deemed a confession of error, automatic reversal is not required. Graham v. Graham, 767 So.2d 277, 279(¶ 6) (Miss.Ct.App.2000). We stated in Graham:
The appellant's argument "should at least create enough doubt in the judiciousness of the trial court's judgment that this Court cannot `say with confidence that the case should be affirmed.'" Where the appellant's brief makes out an apparent case of error, however, this Court is not obligated to look to the record to find a way to avoid the force of the appellant's argument.
Id. (citations omitted). Therefore, we must consider whether the appellant's brief submitted by Mrs. Eldridge and her four children makes out an apparent case of error.
¶ 9. This Court reviews a chancellor's findings of fact under the manifest abuse of discretion and substantial evidence test. N.E. v. L.H., 761 So.2d 956, 960(¶ 8) (Miss.Ct.App.2000). When the chancellor has misapprehended or has an erroneous view of the law, we will conduct a de novo review, and reverse. Id.
¶ 10. Mississippi Code Annotated § 93-13-251 (Rev.1994) addressed the appointment of a conservator, and reads:
If a person by reason of advanced age, physical incapacity or mental weakness is incapable of managing his own estate, the chancery court of the county wherein such person resides may, upon petition of such person or of one or more of his friends or relatives, appoint a conservator to have charge and management of the property of such person, and if the court deems it advisable, also to have charge and custody of the person subject to the direction of the appointing court.
¶ 11. In Harvey v. Meador, 459 So.2d 288, 292 (Miss.1984), the Mississippi Supreme Court adopted a "management competency test" to be applied under the conservatorship statute. This test requires the consideration of several factors: "ability to manage, or improvident disposition, or dissipation of property, or susceptibility of influence or deception by others, or other similar factors." Id. A review of the record shows that Mrs. Eldridge, the ward, was ninety years old at the time the conservatorship was established. Additionally, it discloses that when Mrs. Eldridge was eighty-nine years old she suffered from a stroke. The stroke caused deterioration in Mrs. Eldridge's physical and mental health. This deterioration was shown through the testimony of family members and letters from two of Mrs. Eldridge's treating physicians both of whom expressed that Mrs. Eldridge needed assistance with her physical needs, as well as her other affairs.
¶ 12. To rebut this testimony, Mrs. Eldridge and her four children presented testimony from family members who asserted that their mother was desirous and capable of living with family members. However, when there is conflicting evidence a chancellor's findings of fact regarding that evidence will not be disturbed on appeal unless manifestly wrong or against the overwhelming weight of the evidence. Harvey, 459 So.2d at 293. The necessity for the conservatorship was also supported by the testimony of Mrs. Eldridge.
¶ 13. When Mrs. Eldridge testified, her testimony divulged confusion on her part. She did not appear to understand certain aspects of her health and business affairs, nor did she appear to understand that the court proceedings were being held to determine if she needed a conservator.
¶ 14. Mrs. Eldridge and her four children assert that it was error for the chancellor to deem a conservatorship appropriate *757 where his decision rested only on the advanced age of Mrs. Eldridge. The record, however, does not support this argument. Rather, it shows that the chancellor not only considered Mrs. Eldridge's age, but also considered the aforementioned facts regarding her physical and mental weakness when he concluded that Mrs. Eldridge needed a conservator over her person and estate. No apparent case of error has been proven. The testimony established that Mrs. Eldridge's ability to manage her affairs had been affected; therefore, we conclude that there was no abuse of discretion by the chancellor when he ordered the conservatorship.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF KEMPER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS and CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.