856 So.2d 607 (2003)
In re The Appointment of a CONSERVATOR FOR Mrs. John Q. (Margie Allen) DEMOVILLE.
Margaret Demoville, Appellant,
v.
Dixie Johnson, Appellee.
No. 2002-CA-00150-COA.
Court of Appeals of Mississippi.
June 17, 2003.
Rehearing Denied September 2, 2003.
*608 Ron L. Woodruff, Oxford, Jim Waide, Tupelo, attorneys for appellant.
William M. Beasley, Tupelo, Rebecca L. Hawkins, Jackson, attorneys for appellee.
Before SOUTHWICK, P.J., BRIDGES and THOMAS, JJ.
BRIDGES, J., for the court:
¶ 1. Dixie DeMoville Johnson (Dixie) filed a petition for appointment of conservator in the Chancery Court of Lee County, Mississippi, seeking an appointment of a conservator over the person and estate of her mother, Mrs. Margie DeMoville. The petition was filed as a result of her mother's failing mental health and the belief that Margaret DeMoville (Margaret), Dixie's younger sister, was transferring assets from the estate to herself for her own benefit.
¶ 2. Margaret filed an answer opposing the appointment of a conservator and during the course of the proceedings, she also moved "to stay all proceedings in this case, and to consolidate these matters with the will contest which would follow upon the death of Mrs. DeMoville."
¶ 3. Following three days of testimony and a chance to observe Mrs. DeMoville during the trial, the chancellor appointed Bill Benson as conservator of Mrs. DeMoville's estate and Margaret as conservator *609 of Mrs. DeMoville's person. Margaret appeals to this Court regarding the chancellor's decree.
STATEMENT OF THE ISSUE
I. WHETHER THE CHANCELLOR PROPERLY APPOINTED A CONSERVATOR OVER THE ESTATE OF MRS. MARGIE ALLEN DEMOVILLE.
II. WHETHER THE CHANCELLOR PROPERLY APPOINTED A DISINTERESTED THIRD PARTY, BILL BENSON, RATHER THAN MARGARET DEMOVILLE.

FACTS
¶ 4. Mr. John DeMoville died in 1984 leaving a sizable estate to his widow, Mrs. Margie DeMoville and her daughters, Dixie and Margaret. The estate was never divided or distributed, but was converted into a partnership managed by Mrs. DeMoville, with Margaret's assistance. In 1998, Mrs. DeMoville began showing signs of failing mental capacity due to Alzheimer's disease. In October of 2000, Mrs. DeMoville moved in with Margaret. It was also around this time that Dixie began to question the management of the business and questioned Margaret's decision not to engage an estate planner. Dixie also became convinced that Margaret was hiding information from her, and asked to see bank records, but Margaret refused to produce any records. The familial relationship swiftly declined after that. Finally, in 2001, Dixie filed suit seeking an accounting of all the assets and petitioned for conservatorship of Mrs. DeMoville. The chancellor appointed Margaret as conservator of Mrs. DeMoville and appointed Bill Benson, Lee County Chancery Clerk, conservator of Mrs. DeMoville's estate.

ANALYSIS

I. WHETHER THE CHANCELLOR PROPERLY APPOINTED A CONSERVATOR OVER THE ESTATE OF MRS. MARGIE ALLEN DEMOVILLE.
¶ 5. The applicable standard of review is that findings of the chancellor are to be reviewed "in the light most favorable to the appellee where there is substantial evidence supporting the chancellor's ruling." Wilbourne v. Wilbourne, 748 So.2d 184, 186(¶ 3) (Miss.Ct.App.1999). A chancellor's "findings of fact on conflicting evidence cannot be disturbed on appeal unless it can be said with reasonable certainty that his findings were manifestly wrong and against the overwhelming weight of the evidence." Harvey v. Meador, 459 So.2d 288, 293 (Miss. 1984).
¶ 6. Miss.Code Ann. § 93-13-251 (Rev.1994) governs the petition to appoint a conservator of Mrs. DeMoville's estate. It states:
If a person by reason of advanced age, physical incapacity or mental weakness is incapable of managing his own estate, the chancery court of the county wherein such person resides may, upon the petition of such person or of one or more of his friends or relatives, appoint a conservator to have charge and management of the property of such person, and if the court deems it advisable, also to have charge and custody of the person subject to the direction of the appointing court.
Thus, under this statute, a conservator may be appointed if an individual is "incapable of managing his own estate." Margaret asserts that dissipation of Mrs. DeMoville's property must be proven in order for a conservator to be appointed. However, this is contrary to Mississippi law and *610 is illogical. To require everyone seeking an appointment of a conservator to prove that the person at issue was being cheated by someone goes far beyond anything required in the statute.
¶ 7. In Harvey, the court adopted a "management competency test" with regard to the application of § 93-13-251 which states:
A test of management competency can be answered by considering the factors of: ability to manage, or improvident disposition, or dissipation of property, or susceptibility to influence or deception by others, or similar factors.

Harvey, 459 So.2d at 292 (emphasis added). There is nothing in the above quote that states that a chancellor is required to consider or find each of these factors in order to appoint a conservator. The chancellor may find just one to be sufficient for an appointment of a conservator.
¶ 8. In Conservator of Eldridge v. Sparkman, 813 So.2d 753, 757(¶ 14) (Miss. Ct.App.2001), the court, in applying the Harvey management competency test, considered not only Mrs. Eldridge's age, but also her physical and mental health and her confused testimony in upholding the establishment of a conservator. The Court found that there was no abuse of discretion by the chancellor in appointing a conservator because the evidence "established that Mrs. Eldridge's ability to manage her affairs had been affected." Id. at 757(¶ 14).
¶ 9. Based on the aforementioned case law, the overriding question in determining whether a conservator should be appointed is a person's ability to manage his or her own property. Mrs. DeMoville's undisputed medical condition of severe dementia renders her incapable of managing her own property. Such findings, that she is unable to manage her own property, are supported by two treating physicians, Dr. Ken Davis and Dr. Jan Goff.
¶ 10. The record clearly supports the finding that Mrs. DeMoville's medical condition made her incapable of managing her own business matters. The evidence in the record was overwhelming that Mrs. DeMoville suffers from severe dementia.
¶ 11. Dr. Ken Davis, one of the doctors who saw Mrs. DeMoville, testified in his deposition that his impression, based on mental status testing performed, was that Mrs. DeMoville was suffering from "mild to moderate dementia, most likely of the Alzheimer's type." Later, when Dr. Davis saw Mrs. DeMoville in a subsequent hospital admission, he found her condition to be one of "dementia that's moderate to severe."
¶ 12. Another doctor, Dr. Jan Goff, who saw Mrs. DeMoville while the case was pending, testified that Mrs. DeMoville was incapable of exercising any sort of judgment. When Dr. Goff was asked, during a deposition, as to the degree of her cognitive functions impairment, he responded, "severe, severe, severe, unable to do much except for the very basic, maybe some self care things, but nothing requiring any judgment."
¶ 13. Even Margaret herself testified that her mother "needs help now ... because she has declined very much." And finally, the chancellor was able to observe Mrs. DeMoville during the proceedings and questioned her in chambers. In regards to her testimony, the chancellor remarked, "I seriously question whether Mrs. DeMoville really knew where she was even yesterday." In his decision, the chancellor stated that he did not believe Mrs. DeMoville "even understood what was being asked."
¶ 14. The contention that Mrs. DeMoville is unable to manage her estate is *611 further supported by the chancellor's holding, which states:
I think, at any time, when some person has lost their sense of reasoning and so forth, and they have an estate that needs to be managed, the court can get involved, provided the medical proof is there, without showing that there's been anyone that has allegedly overreached the particular ward in question.
¶ 15. Margaret's own admission that her mother cannot handle matters on her own but needs assistance, coupled with the testimony of Dr. Goff and Dr. Davis, as well as the chancellor's findings, clearly illustrate that Mrs. DeMoville was in desperate need of a conservator. Under these circumstances, and under Mississippi law, the evidence undoubtedly supports the appointment of Margaret as conservator of Mrs. DeMoville's person and Bill Benson as conservator of her estate.

II. IF IT WAS NECESSARY TO APPOINT A CONSERVATORSHIP, WHETHER THE CHANCELLOR PROPERLY APPOINTED A DISINTERESTED THIRD PARTY, BILL BENSON, RATHER THAN MARGARET DEMOVILLE.
¶ 16. In her brief, Margaret argues that if it was necessary to appoint a conservator, then she should have been the person appointed of both Mrs. DeMoville and her estate. The chancellor noted that he would liked to have appointed either Dixie or Margaret as conservator of the estate; however, under the circumstances, he found that was just not practical. With regards to such matters, this decision was well within the chancellor's discretion.
¶ 17. In Mississippi, the law states that a person with a conflict is prohibited from serving in the capacity of a conservator. Jackson v. Jackson, 732 So.2d 916, 921(¶ 7) (Miss.1999) ("if a conflict exists, the fiduciary had a duty to refuse the trust, resign or remove the conflicting personal interest").
¶ 18. However, Mississippi has no case on point regarding conflicts of interest among family members. Because there is no Mississippi case, we turn to another state which has addressed this issue. Missouri, for instance, has a case concerning this issue involving family members in conflict. In the Missouri case, two sons were in dispute over which one of them should handle their mother's affairs. One son, Harold, had previously been given power of attorney by his mother. Couch v. Couch, 824 S.W.2d 65, 65 (Mo.Ct.App. 1991). The court found that the mother was "totally incapacitated as to managing her finances" and appointed a public administrator as conservator. Id. at 67. The court also at this time set aside the power of attorney to Harold because evidence indicated that Harold had made out checks to both himself and his brother on his mother's accounts which were designated as gifts. Id.
¶ 19. Harold appealed, like Margaret in the present case, arguing that he should have been appointed as conservator. The court, relying on previous decisions, held that although the Missouri statute expressed a preference for family members, that preference would not apply where "the record shows a dissention in the family." Id. at 70.
¶ 20. Consistent with Couch, there was evidence presented that showed an overreaching by Margaret with regard to her mother's finances. Over $58,000 went to Margaret from Mrs. DeMoville's personal account. In a sixteen month period, over $78,000 worth of checks, attributable to Margaret's personal benefit, were written from the estate account owned jointly by Mrs. DeMoville, Margaret and Dixie. A *612 lawsuit against Margaret for conversion of funds from both the estate account as well as her mother's personal account is currently pending. Therefore, it was well within the chancellor's discretion to refuse to allow Margaret to serve as conservator of Mrs. DeMoville's estate in light of the discord between her and Dixie and the pending lawsuit. Under Mississippi law, Jackson, 732 So.2d at 921(¶ 7), an individual with a conflict cannot serve as conservator. This, in conjunction with the hostilities between Margaret and Dixie, was ample reason for the chancellor to refuse to appoint Margaret as conservator of Mrs. DeMoville's estate.
¶ 21. Because neither daughter could serve as conservator of the estate, the chancellor appointed the chancery clerk, Bill Benson. The supreme court reviews a chancellor's findings of fact under the manifest abuse of discretion and substantial evidence test. Harvey, 459 So.2d at 293. In United States Fidelity & Guaranty Co. v. Melson, the court affirmed the chancellor's decision to appoint the chancery clerk as conservator in place of an individual with a conflict of interest, despite USF & G's argument that no proof had been submitted that no one else was qualified to serve. United States Fidelity & Guaranty Co. v. Melson, 809 So.2d 647, 656(¶¶ 36-40) (Miss.2002). Because Margaret was not qualified to serve as conservator, the chancellor properly appointed the chancery clerk of the jurisdiction to serve, and the chancellor's decision was well within his discretion.
¶ 22. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McMILLIN, C.J., AND CHANDLER, J., NOT PARTICIPATING.