GRIFFIS, J.,
for the Court.
¶ 1. Alexis Alexander sued Joseph Greer in circuit court to recover for injuries she sustained when Greer’s vehicle struck her, while she was walking home. The jury verdict found Greer not liable. On appeal, Alexander argues that the trial judge erred in excluding Greer’s post-accident medical treatment and in allowing into evidence Greer’s prior consistent statement made to his insurance company following the accident. We find error and reverse and remand.
FACTS
¶ 2. On December 6, 2002, Greer and Alexander were both traveling home along Second Street from Christmas at the Pass[1] in Pass Christian. Around 8:00 p.m., Alexander, while traveling on foot, was struck by the right side of Greer’s vehicle resulting in serious injuries.
¶ 3. Prior to attending Christmas in the Pass, Alexander had taken a Paxil and a shot of Bailey’s liquor to calm her nerves. Dressed in all black, pants, shirt, and long-sleeved jacket, she rode with her mother to the event. Due to a prior accident in 1996 resulting in a brain injury, she was unable to drive herself. Alexander had some art she was selling on display at Antiques and Interiors where she had rented a booth. During the event, she had at least one glass of wine. When Alexander was ready to leave the event, she called her mother to come pick her up. Due to many of the streets being blocked off, her mother had difficulty meeting Alexander. A short time later, Alexander left Christmas in the Pass and began to walk the two and a half miles home along Second Street.
¶4. Greer, who was eighty-eight years old at the time, had prior eyesight problems resulting from macular degeneration. In 1998, he underwent a lens transplant to *588 correct the problem. Greer attended Christmas in the Pass with his daughter. They had dinner during which Greer consumed a can of beer. Following dinner, Greer and his daughter went to the yacht club to watch the boat parade. After it ended, Greer dropped his daughter off at her home and proceeded to drive to his home. He traveled in his lane of traffic, traveling at twenty-five miles per hour in a thirty mile per hour zone. He testified that he had his high beam headlights on until he met an oncoming vehicle and switched to his low beam headlights. A few seconds after passing the oncoming vehicle he heard something strike the right side of his vehicle.
¶ 5. When Alexander was struck by Greer’s vehicle, she sustained a compound fracture to her lower left leg and a serious and disabling brain injury. As a result of the brain injury, Alexander was unable to remember anything about the night of the accident and became permanently disabled. Greer testified that he never saw Alexander, and only realized he had hit something from the sound of his vehicle striking something. It was only after exiting his vehicle and finding Alexander lying off to the side of the road that he realized he had hit a person.
¶ 6. Immediately after seeing Alexander lying on the ground, Greer went for help. A short time later police and paramedics arrived and began to administer care to Alexander. She was then transported to the hospital where, in the course of administering care, they found that Alexander had a .074 blood alcohol content. Greer’s blood alcohol content was never tested.
¶7. Following the accident, Alexander filed a suit against Greer for negligence. Prior to trial, Greer made a motion in limine to exclude evidence that thirty-eight days after the accident he went to his eye doctor and stated that he was having trouble focusing. The judge granted the motion on the grounds that it was a subsequent remedial measure.
¶8. During the last day of a four day trial, Greer testified on direct that he did not use his high beams at the time of impact, because oncoming traffic required him to switch to his low beams. Following a strong cross-examination on the topic, Greer’s counsel sought to enter into evidence a prior consistent statement made by Greer to his insurance company eleven days after the accident. The statement consisted of the same events preceding the accident that Greer testified to on direct, that there was oncoming traffic. The judge allowed the evidence to be entered over the objection of Alexander.
¶ 9. Following the conclusion of testimony, the jury entered a verdict finding Greer not liable for the accident. Alexander made a motion for a new trial which was subsequently denied. Aggrieved, Alexander appeals, and the appeal was deflected to this Court.
STANDARD OF REVIEW
¶ 10. Each allegation of error involves the admission or exclusion of evidence. The standard of review for the admission or suppression of evidence is abuse of discretion. Mississippi Transp. Comm’n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss.2003) (citing Haggerty v. Foster, 838 So.2d 948, 958(¶ 25) (Miss.2002)). Further, the decision of the trial court must stand “unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.” McLemore, 863 So.2d at 34(¶4) (quoting Puckett v. State, 737 So.2d 322, 342(¶ 57) (Miss.1999)).
ANALYSIS
¶ 11. Alexander alleges that the trial court committed two errors in the admission or exclusion of evidence. She first alleges that the trial court erred in exclud *589 ing evidence from Greer’s eye doctor visit thirty-eight days after the accident. Secondly, Alexander argues that the trial court erred in allowing into evidence a prior consistent statement of Greer made to his insurance company shortly after the accident.
¶ 12. Before we address the merits of these claims, we turn to Greer’s argument that any allegation of error with regards to the post-accident medical visit by Greer is waived. Greer states that since Alexander in her notice of appeal only mentioned the judgment that overruled her motion for a new trial, only those issues alleged in that motion may be addressed on appeal. For support, Greer cites Eldridge v. Sparkman, 813 So.2d 753 (Miss.Ct.App.2001). Eldridge was not a full trial on the merits. In fact, it involved an interlocutory appeal on the appointment of a conservator, while other motions were still pending. Id. at 755(¶ 3). This case is much more akin to Kiddy v. Lipscomb, 628 So.2d 1855 (Miss.1993). The supreme court noted that “it is clearly the better practice to include all potential assignments of error in a motion for new trial. However, this approach is not always practical.” Id. at 1359. In light of that rationale, the supreme court went on to hold that “when the assignment of error is based on an issue which has been decided by the trial court and duly recorded in the court reporter’s transcript, such as the admission or omission of evidence, we may consider it regardless of whether it was raised in the motion for new trial.” Id.
¶ 13. Therefore, we find both of Alexander’s errors preserved for appeal and now address each one in turn.

I. The circuit judge erred in excluding medical evidence of Greer’s serious eyesight problems.

¶ 14. Thirty-eight days after the accident, Greer visited Dr. Thurber, an eye doctor, and stated that he was “having trouble focusing.” Greer filed a motion in limine on May 21, 2005 and sought to exclude any reference to the post-accident doctor visit. As a basis for exclusion, Greer stated that the doctor visit was a subsequent remedial measure and should be excluded pursuant to Rule 407 of the Mississippi Rules of Evidence. Following an off-the-record telephonic conference, the judge granted the motion. During motions after the plaintiffs case-in-chief, Alexander’s counsel once again raised the post-accident doctor visit. He argued that a medical visit does not fall within M.R.E. 407 and in the alternative that if the opportunity arose that he should be able to use the visit and statement made to the doctor for impeachment. The judge once again overruled the motion and excluded any evidence from the post-accident doctor visit for any purpose.
¶ 15. Alexander alleged error on two parts of the ruling of the trial judge. First, she alleged that the trial court erred in holding that the post-accident doctor visit was a subsequent remedial measure. The second issue that she raised was that if the post-accident doctor visit was a subsequent remedial measure, then it should be allowed in for impeachment. We first address whether this subsequent medical visit falls within the context of M.R.E. 407.
¶ 16. After a thorough review of the prior case law, it appears to this Court that this particular issue has not been addressed before. Alexander in her brief cited a litany of cases that dealt with subsequent remedial measures for the proposition that “none of which even hint that the application” of M.R.E. 407 should apply to post accident medical visits like the one at hand. We find that the opposite inference holds true as well, i.e., that none *590 of the cases specifically exclude post-accident medical visits from falling within M.R.E. 407. Therefore, we look to the case law on M.R.E. 407, as well as the rule itself.
¶ 17. M.R.E. 407 states:
When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. The rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
It is important to note that the rule itself states that the evidence excluded are termed “measures.” Measure is defined as “an action taken as a means to an end.” The American Heritage College Dictionary 842 (3rd ed.1993). This does not limit the application of this rule merely to “place, method, or appliance” as stated by Greer. Standard Oil Co. v. Franks, 167 Miss. 282, 287, 149 So. 798, 799 (1933). It allows the exclusion of any action taken which would have made the event less likely to occur. The comments provide insight into the reason behind this rule. The rule encourages corrective measures to be taken, or at the very least prevents the discouragement of making such correction by preventing their adverse use in litigation. M.R.E. 407 cmt.
¶ 18. An example of why the principle of the exclusion of subsequent remedial measures exists is contained in Sawyer v. Illinois Cent. R.R., 606 So.2d 1069 (Miss.1992). The supreme court stated that the main reason parties sought to introduce subsequent remedial measures was to show some after-the-fact “guilty knowledge” that a dangerous condition existed. Id. at 1075. By excluding such measures, it will allow the defendant to correct any dangerous condition without creating such a “guilty knowledge” inference. Id.
¶ 19. The same principle applies to the particular facts in the case before us. Following the accident, where Greer failed to see a pedestrian for whatever reason, he visited an eye doctor to have his vision examined. Applying the rule to these facts, Greer took a measure (having his vision examined) after the accident or event, and if he would have visited the doctor earlier any problems with his vision might have been corrected. Failure to exclude such evidence could discourage Greer from seeking help with any vision problems, allowing the potential for more accidents to occur subject to his impaired vision, that is if there is any impairment of his vision. These facts, while they involved a post-accident medical visit, follow the definition and principle found in Rule 407.
¶ 20. Alexander argues that the Court should take a much more conservative view of the rule as found in Standard Oil and not expand its application. In response, it should be pointed at that the final comment to Rule 407 states that “Rule 407 is more liberal than was the similar Mississippi practice.” M.R.E. 407 cmt. After reviewing the language used by the rule and comparing it to prior case law, it appears that the rule for exclusion has a more liberal application. In addition, the exceptions mentioned in the Rule are more liberal as well. Finding that Greer’s post-accident medical visit was a subsequent remedial measure, we now look to the exceptions to Rule 407.
¶ 21. One such listed exception is for impeachment. The trial court denied Alexander’s request to use the evidence merely for impeachment if the circum *591 stance arose. During his testimony, Greer stated that he did not have any problems with his vision. Without the trial court’s prior ruling that the post-accident medical visit could not be entered into evidence, Alexander could have used Greer’s statement to the eye doctor that he was having trouble focusing to impeach Greer’s assertion that he had no eye problems.
¶ 22. While the post-accident medical visit could not come in to prove that Greer was negligent, the trial judge should have, at the very least, allowed Alexander to use it for the sole purpose of impeachment. When the evidence came in before the jury, a limiting instruction could have been issued requiring the jury to only use the evidence for impeachment and not for negligent or culpable conduct.
¶ 23. Having found that the statement should have been admitted under an exception to M.R.E. 407, the evidence would still have to pass the general filter of M.R.E. 403. It states that, “evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.” M.R.E. 403. Here, Greer was the only individual who was able to recall what happened at the time of the accident. His credibility as to what he tells the jury is paramount in such a case. In this case the potential probative value of the statement to the doctor is not outweighed by any unfair prejudice. Therefore, we find that the trial judge abused his discretion for failing to allow evidence from the post-accident medical visit to be used solely for impeachment purposes of Greer.

II. The circuit judge erred in allowing into evidence the prior consistent statement of Greer.

¶24. Alexander’s second allegation of error involves the admission of a prior consistent statement Greer made to his insurance company shortly after the wreck. In his statement to the insurance company, Greer told the insurance company that he dimmed his headlights due to oncoming traffic, and shortly after the car passed Greer heard Alexander hit the passenger side of his car. The statement was offered on redirect of Greer to rebut the allegation made by Alexander’s counsel during cross-examination that Greer fabricated the notion that there was oncoming traffic.
¶ 25. Greer argues that the statement was properly allowed by the trial judge in accordance with Rule 801(d)(1)(B) of the Mississippi Rules of Evidence. It states in part:
a statement is not hearsay ... when the declarant testified at trial or hearing and is subject to cross examination concerning the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.
M.R.E. 801(d)(1)(B). Clearly, under this rule, once Alexander challenged Greer’s recounting of oncoming traffic as a fabrication, Greer’s statement to his insurance company would be admissible. However, the supreme court attached a standard of reliability to this particular rule in Owens v. State, 666 So.2d 814 (Miss.1995). It held that “[a] prior consistent statement introduced to rebut a charge of recent fabrication or improper motive was admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but was inadmissible if made afterwards.” Id. at 816 (quoting Tome v. United States, 513 U.S. 150, 156, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995)). Therefore, we turn to look at the circumstances surrounding the statement Greer made to his insurance company.
*592 ¶ 26. Greer made the statement eleven days after the accident happened when he was reporting to his insurance company of a potential liability against him. While suit had not been filed, the potential for a large amount of liability had arisen. Greer’s vehicle had struck a pedestrian who sustained severe injuries as a result of the accident. While Greer may have been truthful when speaking with his insurance company, the motive to fabricate and potentially avoid the looming liability existed. Therefore, Greer’s prior consistent statement to his insurance company would not be admissible under the Owens standard for Rule 801(d)(1)(B) of the Mississippi Rules of Evidence.
¶ 27. Further, when Alexander requested through interrogatories to produce any statements made during discovery, Greer objected on the grounds of work product. While we do not necessarily agree with Greer that the interview with the insurance company falls under the privilege of work product, both parties have conceded that it should have been considered work product. Therefore, we are precluded from that analysis. In light of the concession, we look to determine what effect such a designation has on the prior statement. In her brief, Alexander points out a very apt definition of work product: as one prepared “in anticipation of litigation.” Haynes v. Anderson, 597 So.2d 615, 618 (Miss.1992). Clearly, since the statement was given in anticipation of litigation, the motive to fabricate had arisen. Once again, it does not matter that the motive to fabricate actually caused the statement, it is enough merely that the motive exists.
¶ 28. Under these specific circumstances, this statement should not have been excepted from the hearsay rule due to the fact that a motive for fabrication existed at the time the prior consistent statement was made. Owens, 666 So.2d at 816. Without a separate permissible exception to the hearsay rule, the statement should have been excluded. Therefore, the trial judge abused his discretion in allowing this statement to be placed into evidence. Finding that the statement was inadmissible, we need not address any potential discovery violations.
CONCLUSION
¶ 29. The judgment of the trial court is reversed and remanded for a new trial.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Christmas in the Pass was a large community event where a number of streets are blocked off and many shops opened their doors to the patrons, often serving wine or soft drinks and hors d’oeuvres. There was a Christmas parade in the evening along with Christmas lights in the city park. There was also a boat parade, viewable from the yacht club.