# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01454-SCT

*IN THE MATTER OF THE CONSERVATORSHIP OF BUFFY BRANTLEY: BILLY BUTLER, INDIVIDUALLY AND AS NEXT FRIEND OF YZETTE BRIDGET BUTLER, JUSTIN PRICE BUTLER, ROSHANDA TATYONA NESHA BUTLER AND ANTRISA FONTAE' BUTLER, MINORS*

*v.*

*LEE GIRTHA BRANTLEY, INDIVIDUALLY, AND AS GUARDIAN OF BRIDGETTE NICKS, YASMINE NICKS, AND JAMES NICKS, JR., AND ISAAC BYRD d/b/a ISAAC BYRD & ASSOCIATES*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2001 |
| TRIAL JUDGE: | HON. H. DAVID CLARK, II |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | ROBERT M. LOGAN |
| ATTORNEYS FOR APPELLEES: | FELECIA PERKINS |
| | KATHRYN N. NESTER |
| | AUDREY CAROLYN CURRY |
| | TERRY R. LEVY |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 02/12/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from upon an order granting partial dismissal of a complaint filed by Billy Butler, Yzette Bridget Butler, Justin Price Butler, Roshanda Tatyona Nesha Butler and Antrisa Fontae' Butler (collectively the "Butlers") and the subsequent entry of final judgment by the Scott County Chancery Court.

This order and final judgment provided, inter alia, that the final judgment was entered pursuant to Miss. R. Civ. P. 54(b). The Butlers' complaint sought, inter alia, that they be awarded a portion of a court-approved settlement. The settlement agreement at issue purported to discharge all claims regarding the alleged medical malpractice of the Mississippi Baptist Medical Center and others in relation to the treatment of Buffy Brantley (Buffy). The Butlers, Buffy's father and half-siblings, argue that they were necessary parties who were either not included in the settlement or fraudulently induced to waive their valid claims. Following the partial dismissal of their complaint, the Butlers appeal, presenting the following issues for the Court's consideration:

> I. **WHETHER THE TRIAL COURT ERRED IN GRANTING PARTIAL DISMISSAL OF PLAINTIFFS' CLAIM WHEN THEY SUED FOR A PORTION OF A CONTINGENT WRONGFUL DEATH SETTLEMENT INTENDED TO COVER ALL POTENTIAL CLAIMANTS.**
>
> II. **WHETHER THE TRIAL COURT ERRED IN GRANTING PARTIAL DISMISSAL OF PLAINTIFFS' CLAIM WHEN THEY ALLEGE INSUFFICIENT PROCESS AND RESULTING LACK OF JURISDICTION OVER PERSON WITH RESPECT TO THE CONSERVATORSHIP PROCEEDINGS.**

### FACTS

¶2. Buffy is the daughter of Billy Butler (Butler) and Lee Girtha Brantley (Brantley). Butler and Brantley were never married. They parted ways, and both have since married and have children from other spouses. Yzette Bridget Butler, Justin Price Butler, Roshanda Tatyona Nesha Butler and Antrisa Fontae' Butler (the Butler children) all live with Butler and are half-siblings of Buffy. Bridgette Nicks, Yasmine Nicks, and James Nicks, Jr. (the Nicks children) are also half-siblings of Buffy and reside with Brantley, their mother.

2

¶3.     In November 1997, Buffy suffered a traumatic illness and was treated at the Mississippi Baptist Medical Center in Jackson, Mississippi. As a result of alleged medical malpractice, Buffy suffered permanent injury. A complaint was filed against Mississippi Baptist Medical Center and others in Hinds County Circuit Court by Brantley, as next friend of Buffy.[1] A settlement was reached pursuant to a written agreement dated January 19,1997, between Mississippi Baptist Medical Center and other defendants. The settlement was for $10 million and constituted a full and final release of all claims on behalf of Buffy. The agreement stated: "The release must be approved by the court and **must include all claimants and potential claimants**." (emphasis added).

¶4.     Brantley petitioned the Scott County Chancery Court to be appointed the conservator of Buffy and her estate. She also petitioned the court for the authority to settle the claim. The court granted these requests on April 4, 1997.[2]

¶5.     On January 5, 1998, Brantley and the Nicks children filed a Petition for Authority to Settle Doubtful Claim. This petition stated that a claim would be settled on behalf of Buffy, but did not explain the amount of the settlement, who would receive the settlement proceeds, or the amount of attorney fees. It did mention that Mississippi Medicaid Division had a lien for $183,256.11[3] against the $10 million settlement proceeds.

---

[1] *Lee Girtha Brantley, as Next Friend of Buffy C. Brantley, a Minor v. Mississippi Emergency Association, P.A., MEA, Inc., Jon Finch, D.O., Jon Meyer, M.D. and Mississippi Baptist Medical Center*, Hinds County Circuit Court, Cause No. 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-CIV.

[2] Butler asserts that neither the court docket, the court file, nor the order appointing the conservator reflect that process was served on him.

[3] The chancellor, however, found the amount of the lien to be $183,662.11.

¶6. The following day, January 6, 1998, Butler executed a waiver of process by which he voluntarily consented to waive notice of any hearings regarding Buffy, and he also waived process of all amended petitions filed with the estate.

¶7. On January 15, 1998, Brantley and the Nicks children filed an Amended Petition For Settlement of Doubtful Claim. In light of the waiver signed by Butler, he was given no notice. This particular amended petition stated that the settlement amount was $9,350,000.

¶8. Brantley and the Nicks children contacted Butler on January 21, 1998, to obtain power of attorney from him allowing Brantley to sign a release on his behalf, and to obtain a Relinquishment of Inheritance Rights. Butler was not informed of the settlement details before signing these documents.

¶9. On January 22, 1998, Brantley and the Nicks children filed a third Petition (Second Amended Authority To Settle Unliquidated And Doubtful Claim of a Minor). This petition was also filed with no notice to Butler. This petition informed the court that there was a $10 million settlement, and explained that $500,000 was allocated to Brantley and $150,000 was allocated to the Nicks children, who reside with Brantley. This petition never mentioned Butler or his children.

¶10. Paragraph 9 of this final petition stated:

> That, as a part of this proposed settlement, the parties desire to compromise, settle and foreclose any inchoate claims, for the past, present and future loss of love, society, companion, [sic] support and services of Buffy Brantley allegedly resulting from the conduct made the subject of the civil action referenced above.

¶11. This settlement petition was approved by the court, and an order was issued and dated January 26, 1998. The following is a breakdown of the settlement disbursements:

TOTAL SETTLEMENT                                     $10,000,000.00

4

| | |
|---|---|
| Expenses | 80,159.05 |
| Lien | 183,662.11 |
| Buffy's Estate | **5,454,833.51 |
| *Byrd & Associates | 3,894,471.53 |
| Lee Girtha Brantley, Individually | **297,595.23 |
| Nicks children | ** 89,278.57 |

_____

*40% contingent attorney fee
**after attorney fee

Butler and the Butler children were never made aware of the hearing and received nothing from the settlement.

¶12. On January 28, 1998, Brantley signed a release on behalf of herself, Butler (pursuant to the power of attorney), Buffy and the Nicks children releasing the circuit court defendants (Baptist Medical Center and others).

¶13. On November 12, 1999, Butler, individually and as next friend of the Butler children filed a First Amended Complaint praying that the chancery court would (1) set aside the January 26, 1998, order appointing Brantley conservator of Buffy; (2) set aside the power of attorney signed by Butler dated January 21, 1998; (3) set aside the Relinquishment of Inheritance Rights signed by Butler, dated January 21, 1998; (4) reopen the issue of allocation of the $10 million settlement proceeds, including attorney's fees; (5) order all defendants to return to the registry of the court all sums received from the settlement; (6) award Plaintiffs their rightful portion of settlement proceeds; and (7) award Plaintiffs punitive damages.

¶14. An order dated December 21, 2000, granted partial dismissal of the complaint insofar as it sought to set aside the appointment of Brantley as conservator, and insofar as it sought a portion of the damages arising from injuries suffered by Buffy.

¶15. The Butlers pursuant to Miss. R. Civ. P. 15(a), filed a Second Amended Complaint to Set Aside Settlement, For Damages and Other Relief dated January 9, 2001. The chancellor entered an Order Granting Partial Dismissal of the Complaint and Entry of Final Judgment pursuant to Miss. R. Civ. P. 12(b)(6) and 54(b) on August 28, 2001, again dismissing the complaint insofar as it sought to set aside the appointment of a conservator and to claim a portion of damages arising from Buffy Brantley's injuries, for failure to state a claim, pursuant to Miss. R. Civ. P. 12(b)(6). The partial dismissal order found:

> That neither a natural parent, nor a half-sibling, is entitled to recovery of any damages themselves, in the matter of a personal injury claim, by and on behalf of an injured minor child.
>
> A natural parent and half-siblings are statutory wrongful death beneficiaries. Buffy Brantley's injuries are serious and permanent; but Brantley is still alive.
>
> No portion of the claim for personal injury settled, by and on behalf of Buffy Brantley, was a contingent future claim for the wrongful death of Buffy Brantley.
>
> Neither Billy Butler, as Buffy's natural father, nor his children, as Buffy's half-siblings, are entitled to recovery of any damages, in the matter of the personal injury claim settled by and on behalf of Buffy Brantley.

## ANALYSIS

¶16. A Rule 12(b)(6) motion to dismiss under raises an issue of law. *T.M. v. Noblitt*, 650 So.2d 1340, 1342 (Miss. 1995) (collecting authorities). This Court conducts de novo review on questions of law. *Id.* When considering such a motion, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt on the face of the complaint that the plaintiff will be unable to prove any set of facts in support of his claim. *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234, 1236 (Miss. 1999).

6

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING PARTIAL DISMISSAL OF PLAINTIFFS' CLAIM WHEN THEY SUED FOR A PORTION OF A CONTINGENT WRONGFUL DEATH SETTLEMENT INTENDED TO COVER ALL POTENTIAL CLAIMANTS.**

¶17.    The Butlers contend that the chancery court authorized Brantley and the Nicks children to receive $650,000 in a settlement claim from which they were improperly excluded.  They further contend that Baptist and others who negotiated this settlement intended the settlement to be final and to cover all potential claimants, including Butler and the Butler children.  Brantley's attorney represented to the chancery court that they were acting on behalf of all interested parties, yet the Butler children were not mentioned, and Butler alleges he was fraudulently induced into signing a Power of Attorney and Waiver of Inheritance Rights.[4]

¶18.    Insofar as the Butlers argue that the settlement usurped their potential wrongful death claims, dismissal was proper because Buffy is still alive.  Mississippi's wrongful death statute, Miss. Code Ann. § 11-7-13 (Supp. 2003), does not recognize "contingent" wrongful death claims.  To do so in this case would usurp Buffy's right to damages to which she would be entitled simply because her relatives anticipate her death earlier than it will naturally occur.  The wrongful death statute is based on the premise that whenever the death of any person was caused by a wrongful act, neglect or default of another, in such a manner as would have entitled the injured party to have sued had death not ensued, an action could be maintained in the name of that person's executor or administrator for the benefit of certain relatives.  "Implicit in the codification of wrongful death action is the notion that a claim sounding in wrongful death

_____

[4] This last assertion, referring to fraud, is still pending in the trial court and is not an issue for our consideration.

7

comes into being upon the death of the deceased." ***Gentry v. Wallace***, 606 So.2d 1117, 1120 (Miss. 1992). "Our wrongful death statute provides a cause of actions to the *survivors* of those who die as a result of wrongful conduct. A person cannot qualify as a 'survivor' until he survives someone." ***Id.*** at 1121 (emphasis in original). "A cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested." ***Id.*** Butler has based his claim on law that the State of Mississippi does not recognize. Therefore, there is no claim upon which relief can be granted, and the trial court was correct to grant a dismissal.

¶19.    However, in the interest of justice, this Court feels compelled to take notice of another aspect of this case. The original defendants in this case came to a settlement agreement with Brantley believing that all interested parties were involved, and that, by their agreement, all possible claims encompassing the claim of medical malpractice would be extinguished. Brantley, the Nicks children, and Butler, by way of power of attorney, were all involved in this settlement. This settlement was submitted to the chancery court and was approved; however, the chancery court was unaware of a particular fact which affects the settlement agreement. The Butler children, according to the record, were never mentioned by Brantley during settlement agreements or to the chancery court during approval of the settlement. While Butler signed a power of attorney in favor of Brantley, it said nothing about his minor children who have the same relation to Buffy as do the Nicks children. Thus, interested parties were left out of the settlement, and their rights were not represented. In the interest of fairness and equity, we conclude that the approval of the chancery court of the settlement must be reversed. All monies awarded to Brantley and the Nicks children should

8

be removed from their possession[5] and added to Buffy's estate. Because of possible conflicts of interest, a neutral conservator should be appointed to replace Brantley as conservator. This conservator should be required to make a quarterly accounting for the sake of protection of the estate and Buffy's interests pursuant to Miss. Code Ann. § 93-13-67 (Rev. 1994).

> **II.      WHETHER THE TRIAL COURT ERRED IN GRANTING PARTIAL DISMISSAL OF PLAINTIFFS' CLAIM WHEN THEY ALLEGE INSUFFICIENT PROCESS AND RESULTING LACK OF JURISDICTION OVER PERSON WITH RESPECT TO THE CONSERVATORSHIP PROCEEDINGS**.

¶20.    Brantley administered Buffy's estate under the conservatorship laws; however, Butler contends that since Buffy is a minor, this proceeding should be controlled by the law of guardianships. While the conservatorship and guardianship laws are alike in many aspects, the parties submit that these laws are not identical insofar as those persons who are required to receive notice. To establish which law should have been utilized to handle Buffy's estate, we first take note of the individuals who may be declared wards under each statute:

---

[5]Brantley has failed to establish exactly why she was awarded this amount of monies. This Court could find only two reasons upon which she could have been awarded this money, future earnings of the child and medical expenses. Medical expenses were settled separately, and were not paid by Brantley, and had the award been based on the child's lost future earnings, the father and mother of the child are entitled to equal sums. *Wright v. Standard Oil Co.,* 470 F.2d 1280 (5th Cir. 1972).

The same goes for the monies awarded to the Nicks children. Children do not have a cause of action for injuries to their siblings. *Moore v. Kroger Co.*, 800 F. Supp. 429, 434 (N.D. Miss. 1992), *aff'd mem*. 18 F.3d 936 (5th Cir 1994).

Based on these cases and law, the only reason the parties could have been awarded this money is based on a contingent wrongful death claim. Since Mississippi does not recognize this claim and Buffy is not dead, the awards should be added to Buffy's estate so that it can be distributed properly to all interested parties.

9

> Guardians may be appointed for minors, Miss. Code Ann. § 93-13- 15 (1972); or incompetent adults, Miss. Code Ann. § 93-13-121 (Supp.1983); a person of unsound mind, Miss. Code Ann. §§ 93-13-123, 125 (1972); alcoholics or drug addicts, Miss. Code Ann. § 93-13-131 (1972); convicts in the penitentiary, Miss. Code Ann. § 93-13-135 (1972); persons in the armed forces or merchant seamen reported as missing, Miss. Code Ann. § 93-13-161 (1972); or for veterans entitled to receive moneys from United States Veterans' Bureau, Miss. Code Ann. § 35-5-5 (1972) or minor wards of a veteran, Miss. Code Ann. § 35-5-7 (1972). The guardian is the legally recognized custodian of the person or property of another with prescribed fiduciary duties and responsibilities under court authority and direction. A ward under guardianship is under a legal disability or is adjudged incompetent.

*Harvey v. Meador*, 459 So.2d 288, 291 (Miss. 1984). A conservator for the management of property may be appointed by the chancery court of the county of the residence of any person who "by reason of advanced age, physical incapacity, or mental weakness is incapable of managing his own estate." Miss. Code Ann. § 93-13-251 (Rev. 1994). Additionally, "if the court deems it advisable," the conservator may have charge and custody of the person as well as the property. *Id.*

¶21. Since the "Legislature provided a new procedure through conservatorship for supervision of estates of older adults with physical incapacity or mental weakness, without the stigma of legally declaring the person non compos mentis," *Harvey*, 459 So. 2d at 291-92, it would appear evident at first glance that a guardianship is utilized for minors and conservatorships for adults. But further analysis of the applicable statutes reveals that there are no limitations or requirements for age. Since Buffy suffers from a permanent illness which renders her unable to manage her own estate, either a guardianship or a conservatorship would be appropriate in this case. However, the use of a conservatorship is more appropriate in this situation because a guardianship of a minor is terminated when the ward reaches the age of 21, Miss. Code Ann. § 93-13-75 (Rev. 1994), while a conservatorship can be terminated only if the person is restored in

10

mind and body. Miss. Code Ann. § 93-13-265 (Rev. 1994). In light of the unfortunate reality that Buffy

will most likely not recover from her severe injuries, a conservatorship is appropriate.

¶22. Regarding the notice required under a conservatorship, Miss. Code Ann. § 93-13-253 states:

> Upon the filing of such petition, the clerk of the court shall set a time and place for hearing and shall cause not less than five (5) days' notice thereof to be given to the person for whom the conservator is to be appointed, except that the court may, for good cause shown, direct that a shorter notice be given. Such notice shall also be given to the husband or the wife, or a descendant or an ascendant, or next of kin of the person for whom the conservator is to be appointed, provided the person to whom notice is given is a resident of Mississippi, except where such person is himself the petitioner, it being the intention of the legislature to require personal service on the person for whom the conservator is to be appointed and one relative. If said person is entitled to any benefit, estate or income paid or payable by or through the Veterans' Administration of the United States Government, such administration shall also be given such notice. Notice may be by personal service by the sheriff as in service of other process but nothing herein shall be construed to prevent competent persons from accepting notice in person from the clerk or his deputy.

¶23. According to this statute, which covers both guardianships and conservatorships, Brantley has failed

to meet the requirement of sending notice to next of kin. Butler, being the father of Buffy, would certainly

qualify as being next of kin. However, this mistake is not fatal considering all the facts of the case under

our standard of review on a Rule 12(b)(6) dismissal. Butler asserts in his complaint that he was never

properly served with notice of the conservatorship proceeding, thus, he asserts the chancery court never

had jurisdiction over him. This must be taken as true. However, he also admits that he was present in the

courtroom during the proceeding. This Court held in *McCoy v. Watson*, 154 Miss. 307, 122 So. 368,

370 (1929), that actual knowledge by a defendant of the pendency of a suit against him is immaterial,

"unless there has been a legal summons or a *legal appearance*." *Brown v. Riley*, 580 So.2d 1234,

1237 (Miss. 1991) (emphasis added). A voluntary appearance is an "overt act by which, or as a result of

11

which, a person against whom a suit has been commenced submits himself of the jurisdiction of the court in the particular suit." *McCoy*, 122 So. at 369. While Butler's complaint makes no mention of the fact, Brantley's brief, as well as the Finding of Facts and Conclusions of Law issued by the trial court,[6] point out that, while in court, Butler was asked directly if he had any problem with the granting of the conservatorship, and he responded that he had no objection. This Court concludes that this constitutes an overt act which submitted Butler to the jurisdiction of the court and therefore amounted to notice of the proceedings. Therefore, notice was not required to be served on Butler in the conservatorship proceeding. It was met when Butler made a voluntary legal appearance during the proceeding by answering the questions put forth to him. Consequently, we affirm the decision of the chancery court on this issue.

## CONCLUSION

¶24. The Butlers have failed to state a claim upon which relief can be granted in either of the two issues presented to this Court; however, in the interest of justice the court-approved allocation of the settlement monies must be reversed because necessary parties, the Butler children, were not mentioned in the settlement proceedings. The monies awarded to Brantley and the Nicks children are therefore to be added to Buffy's estate. On remand, the chancery court should appoint a neutral conservator to replace Brantley

---

[6]In his order, the trial judge stated at paragraph 4, as follows:

The Court independently recalls the hearing on the Petition For Appointment of Conservator, conducted on April 4, 1997; and the Court specifically recalls and takes judicial notice that Billy Butler attended the hearing and was questioned by the Court, and he indicated to the Court that he had no objection to the appointment of Lee Girtha Brantley as Conservator of the person and of the estate of Buffy Brantley.

as conservator in light of possible conflicts of interest in handling Buffy's estate; require a quarterly

accounting of the estate; and conduct further proceedings in accordance with this opinion.

¶25.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., GRAVES AND DICKINSON, JJ., CONCUR.  COBB AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**