989 So.2d 986 (2008)
In the Matter of the CONSERVATORSHIP OF Emma Jane HESTER.
Emma Jane Hester, Appellant.
v.
David Hester, et al., Appellees.
No. 2007-CA-00225-COA.
Court of Appeals of Mississippi.
April 22, 2008.
Rehearing Denied September 2, 2008.
*987 W. Brady Kellems, Brookhaven, Joseph Preston Durr, Attorneys for Appellant.
Lane B. Reed, Meadville, Matthew M. Williams, Attorneys for Appellees.
Before LEE, P.J., ISHEE and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. This is an appeal from an order of the Chancery Court of Franklin County appointing David Hester (David) conservator over the estate and person of his mother, Emma Jane Hester (Emma). Aggrieved, Emma appeals and raises three issues:
I. Whether the chancellor's decision is against the overwhelming weight of the evidence.
II. Whether the decree is invalid for failure to conform with the statutory *988 requirements of Mississippi Code Annotated section 93-13-255 (Rev.2004).
III. Whether the chancellor's pretrial order prohibiting the disposal and transfer of Emma's assets violated Mississippi Rule of Civil Procedure 65.

FACTS
¶ 2. On October 2, 2006, David filed a petition to appoint himself conservator over the person and estate of his mother, Emma, who was seventy-six years of age at the time. Emma outlived her husband, Elden Hester (Elden), who cared for her and handled their financial affairs until the time of his death  approximately three years prior to trial. After Elden's passing, Emma was accompanied at home by her live-in son, Glen Hester (Glen), who utilized Emma's front yard as a used car lot for his business, referred to in the record as Glen's Auto Sales. Despite Glen's presence, Emma's home fell into a state of exceptional disrepair. In addition to numerous used vehicles and automotive parts scattered about, the area surrounding the house was littered with garbage and cluttered with old items that most people would consider junk. During Hurricane Katrina, a tree fell through the roof, and a freezer full of food spoiled due to power outages. Although problems of this type were suffered by many during the storm, neither condition had been fixed by the time of trial  some sixteen months later  notwithstanding that Emma had received a FEMA check.[1]
¶ 3. Concerned about his mother's situation, David attempted to provide his assistance. On one occasion he refilled Emma's gas tank after learning that she had been without central heat; on another occasion, David attempted to clean around the house. However, David's attempts to intervene were met with opposition from Emma who ultimately told him that he was not welcome in her home, prompting David to file the conservatorship petition.
¶ 4. Prior to trial, Emma was examined by her primary physician, Dr. Benjamin Yarbrough, as well as a psychologist, Dr. Linda Wilborn. In his certificate of findings, Dr. Yarbrough stated that Emma suffers from diabetes and arthritis, and he opined that "[b]ased on my examination, I feel like she is able to manage most of her affairs. She still requires help giving herself medication, and she is somewhat uncertain at times of her business affairs." Dr. Wilborn represented in her certificate of findings that Emma possesses "below average intellect [and] memory problems which are probably subsequent to arteriosclerosis and/or unknown etiology."
¶ 5. At trial, David testified as to the condition of the house and his failed efforts to improve his mother's circumstance. David also stated that he had previously observed Glen scream at Emma, and Glen had always belittled his family members. The guardian ad litem, M. Maxwell Graves, testified that he has known Emma and her family for quite some time. He stated that "[i]t's obvious that Emma is not now nor has she probably ever been capable of managing her own financial affairs."
¶ 6. Emma testified that she could perform some basic tasks, like cooking and taking her medicine. However, she stated that her arthritis and back problems prevented her from engaging in activities more physically involved, like cleaning. When questioned about her finances, Emma was confused as to how many bank accounts she had, the amount of money in the accounts, and in which banks the accounts were held. While Emma recalled *989 having a joint checking account with Glen, she was unaware of most of the transactional activity that she was asked about. Bank records indicated that, on numerous occasions, Glen withdrew amounts between $100 and $1,500 from the joint account, sometimes depositing corresponding amounts into his personal account designated for Glen's Auto Sales. When asked about these transactions, Emma was unaware that most had taken place. She indifferently concluded that Glen probably used the money to purchase cars for his business. Although Emma testified that she believed Glen had repaid her any monies taken for his own use, the bank records revealed no deposit into her account from Glen's Auto Sales.[2] Emma was also unaware of the amount of her monthly bills and that several bills had recently gone unpaid.
¶ 7. At the conclusion of the trial, the chancellor determined that Emma was incapable of managing her business affairs and entered an order appointing David conservator over Emma and her estate. Aggrieved by the chancellor's decision, Emma now appeals to this Court.

STANDARD OF REVIEW
¶ 8. On appeal, a chancellor's findings will not be reversed unless "manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." In re Estate of Ladner, 909 So.2d 1051, 1054(6) (Miss.2004).

DISCUSSION

I. Whether the chancellor's decision is against the overwhelming weight of the evidence.
¶ 9. Pursuant to Mississippi Code Annotated section 93-13-251 (Rev.2004), the appropriate chancery court may appoint a conservator over the estate and, if deemed appropriate, over the person of one who, "by reason of advanced age, physical incapacity or mental weakness is incapable of managing his own estate." A determination of legal incompetence or legal disability is unnecessary to establish a conservatorship. Harvey v. Meador, 459 So.2d 288, 292 (Miss.1984). In determining the need for a conservatorship, a "management competency test" is applied by considering the following: "ability to manage, or improvident disposition, or dissipation of property, or susceptibility to influence or deception by others, or other similar factors." Id.
¶ 10. In the instant case, we find sufficient evidence to support the chancellor's appointment of a conservatorship. The facts in the record show that, at the time of trial, Emma was a seventy-six-year-old woman of below average intellect who had never concerned herself with the handling of her own business affairs. Instead, she deferred to others to handle these matters in her stead, i.e., her husband, Elden, until his death, then Glen. Emma's own testimony vividly illustrates her inability and/or refusal to deal with the management of her estate. She possesses little meaningful knowledge regarding the amount or whereabouts of her finances, and she has exhibited overall indifference to her business affairs and her living conditions alike. Emma has clearly misplaced her reliance on Glen who has dissipated her funds at will, using them as his own. Emma's indifference to and/or ratification of Glen's overreaching demonstrates the level of ease with which Emma may be taken advantage *990 of. Although there was evidence that Emma was capable of performing basic tasks of self-preservation, the evidence supports the conclusion that Emma was incapable of managing her own affairs by reason of advanced age and mental weakness. The record also makes clear that one more responsible than Glen was needed to exercise care and custody over Emma's estate and person.
¶ 11. We find ample evidence supporting the chancellor's finding that Emma was incapable of handling her estate. Therefore, we find no error in the chancellor's decision to appoint David as conservator over the estate and person of Emma. This issue is without merit.

II. Whether the decree is invalid for failure to conform with the statutory requirements of Mississippi Code Annotated section 93-13-255 (Rev.2004).
¶ 12. Under this assignment of error, Emma asserts that neither Dr. Yarbrough's nor Dr. Wilborn's written report filed with the chancery court is a certificate as contemplated by Mississippi Code Annotated section 93-13-255 (Rev.2004). Section 93-13-255 provides in pertinent part:
The chancery judge shall be the judge of the number and character of the witnesses and proof to be presented, except that there shall be included therein at least two (2) physicians who are duly authorized to practice medicine in this state, or another state or one (1) such physician and a psychologist ... each of whom shall be required to make a personal examination of the subject party, and each of whom shall make in writing a certificate of the result of such examination, which certificate shall be filed with the clerk of the court and become a part of the record of the case. They may also be called to testify at the hearing.
(Emphasis added).
¶ 13. Emma argues that the written reports filed in the instant case failed to comply with section 93-13-255 because the reports's findings were not stated in terms of or did not track the language of section 93-13-251  that Emma "by reason of advanced age, physical incapacity or mental weakness is incapable of managing [her] own estate."
¶ 14. We do not find section 93-13-255 to require as much. Regarding the form or content required of a physician's certificate, section 93-13-255 provides that each of the two physicians shall make a written certificate memorializing the result of their personal examination of the ward, and that certificate must be filed with the clerk of the court. We find no suggestion in our conservatorship statutes that the physicians' certificates required under section 93-13-255 must be stated in terms of or track the language of section 93-13-251. Section 93-13-251 simply sets forth the determination a chancellor must make after considering all of the evidence. The certificates required under section 93-13-255 are pieces of the evidence, which aid the chancellor in his or her determination by apprising the chancellor of the ward's medical condition(s). The point to be stressed is that it is the chancellor who determines whether the ward is rendered incapable of managing his or her own estate due to advanced age, physical incapacity, or mental weakness.
¶ 15. Moreover, to accept Emma's argument that a physician's certificate must be stated in the language of section 93-13-251, would draw very near to requiring the physician to give an opinion embracing the ultimate issue. While "ultimate issue" testimony appears to be generally admissible under Mississippi Rule of Evidence 704, *991 we find it better practice not to require or encourage such testimony.
¶ 16. In the instant case, the results of Dr. Yarbrough's and Dr. Wilborn's respective personal examinations of Emma were recorded in their written certificates filed with the court and made a part of the record. In deciding whether a conservator was needed, the chancellor had the benefit of two separate evaluations of Emma's medical condition. Thus, the requirements of section 93-13-255 were met. This issue is without merit.

III. Whether the chancellor's pretrial order prohibiting the disposal and transfer of Emma's assets violated Mississippi Rule of Civil Procedure 65.
¶ 17. Prior to trial, the chancellor entered an order prohibiting the disposal and transfer of Emma's assets, which stated in pertinent part that:
Neither, Emma Jane Hester nor any person living with her or associated with her business matters shall expend any funds, which are not directly for Emma Jane Hester's care and maintenance, being normal routine everyday living expenses. No third parties shall receive any funds of Emma Jane Hester until trial be had on this matter on October 24, 2006.
Emma argues that this order was, in effect, a temporary restraining order issued in violation of Mississippi Rule of Civil Procedure 65(b) because David failed to provide a written certification regarding any efforts made to give notice or the reasons why notice should not be required. Emma also asserts that the chancellor's order was issued in violation of Rule 65(c) because no security was posted by David.
¶ 18. Assuming the chancellor's order may be properly characterized as a temporary or preliminary injunction, its terms had expired by the end of the trial and are no longer in effect. Therefore, this issue is moot. Moreover, the injunction was an interlocutory order. However, Emma did not seek certification for an interlocutory appeal pursuant to Mississippi Rule of Appellate Procedure 5(a). In any event, the validity of the chancellor's order appointing David as conservator would not be affected even if we were to determine that the injunction was wrongfully issued. This issue is moot.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF FRANKLIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] To Glen's credit, a tarpaulin was placed over the hole in the roof.
[2] Emma later characterized these transfers as gifts in appreciation of the care provided her by Glen.