# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00971-COA

IN THE MATTER OF THE
CONSERVATORSHIP OF THE ESTATE OF
MARY ELIZABETH BREWER JACKSON:
MARY ELIZABETH BREWER JACKSON                                    APPELLANT

v.

JAMES E. REED, CONSERVATOR OF THE                                APPELLEE
ESTATE OF MARY ELIZABETH BREWER
JACKSON

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2014 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | HELEN KENNEDY ROBINSON |
| ATTORNEY FOR APPELLEE: | JOHN H. DANIELS III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | APPOINTED APPELLEE AS CONSERVATOR |
| DISPOSITION: | AFFIRMED - 10/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     This case concerns the appointment of James E. Reed as conservator over Mary Elizabeth Brewer Jackson's person and estate.

## PROCEDURAL HISTORY AND FACTS

¶2.     On July 3, 2012, Jackson, who was ninety-three years old at the time, executed a power of attorney naming Reed to act on her behalf. The document also authorized Reed to

make health-care decisions. Jackson's husband, Rightor, had died in 2009, and Jackson subsequently moved to Inverness, Mississippi, to be near family, including Reed and his wife, Carolyn. Reed was Jackson's nephew. Jackson also had another nephew, Johnny Reed, who was Reed's brother.

¶3.     Jackson's property included a life estate in a house in Inverness, a five-sixths interest in 205 acres of land in Arkansas, bank accounts, certificates of deposit, and Rightor's pension. Under Jackson's power of attorney, Reed, with Carolyn's assistance, paid Jackson's bills and managed her interest in the Arkansas property.

¶4.     In September 2013, Sherry Winston was hired to be Jackson's live-in caregiver. Winston had cared for Jackson's husband prior to his death. Winston was paid approximately $1,260 per week. At some point in January 2014, Winston and Betsy Guinn[1] drove Jackson to North Mississippi. This trip was precipitated by Jackson's upcoming visit to a local assisted-living facility. According to Reed and Carolyn, they had discussed this visit with Jackson on more than one occasion. Reed testified that the decision was based on Jackson's concerns about her financial future, as the assisted-living facility cost half the price of what Jackson was paying Winston. Although Reed and his wife had been aware of a previous trip by Jackson and Winston to visit Jackson's friends and family in North Mississippi and Tennessee, neither was informed of this second trip. During this trip, Guinn contacted a local attorney, Helen Kennedy Robinson, who prepared a new power of attorney

---

[1] Rightor had been adopted but remained close with his biological family. Guinn was his biological great-niece.

for Jackson. This power of attorney named Winston to act on Jackson's behalf.[2] Jackson also signed a document revoking Reed's power of attorney. Reed was notified via letter from Robinson.

¶5.	On January 15, 2014, Reed filed a petition in the Sunflower County Chancery Court seeking a temporary restraining order (TRO), a preliminary injunction, and to set aside the power of attorney. According to Reed, he was concerned for Jackson's safety. After two hearings, the chancellor granted the TRO and froze Jackson's assets. On February 5, 2014, Reed filed a petition to be appointed Jackson's conservator. The chancellor consolidated both causes, and a hearing was held on May 27, 2014. The chancellor also ordered three physicians to examine Jackson and determine whether she was capable of managing her own estate.

¶6.	Dr. Steven Clark examined Jackson and diagnosed her with dementia. Dr. Clark's examination notes indicate that Jackson told him her "memory loss is constant," and that Jackson had previously been prescribed medication to treat her symptoms. Dr. Clark found that Jackson was "generally pleasant but has an absolute loss of recent memory, judgment, and ability to make simple abstract associations." Dr. Clark's prognosis was advanced dementia, causing Jackson to be incapable of managing her own medical or financial affairs. Dr. Julian Jesubatham examined Jackson and also determined that she was incompetent to manage her own affairs. Dr. Henry Flautt examined Jackson and found her to be competent to make her own personal decisions.

---

[2] This power of attorney did not include a health-care directive.

3

¶7.     The chancellor determined that Jackson was not competent to act on her own behalf and appointed Reed as conservator over Jackson's person and estate. The chancellor ordered the chancery clerk to compile an inventory and accounting of Jackson's assets. The chancellor ordered Guinn to be reimbursed $250 for repairs she made to Jackson's house and Winston to be paid $15,960 for her services to Jackson. The chancellor also denied Robinson's request for attorney's fees.

¶8.     Jackson now appeals,[3] asserting the following issues: (1) the TRO was improperly granted; (2) Reed should not have been appointed as conservator; and (3) the chancellor erred in denying attorney's fees.

## DISCUSSION

### I.     TRO

¶9.     Jackson first argues that the chancellor erroneously issued the TRO; thus, she should have been awarded attorney's fees related to the TRO. Jackson claims that the TRO did not meet the requirements of Mississippi Rule of Civil Procedure 65(b)(1) and (2). Rule 65(b) states that a TRO

> may be granted, without notice to the adverse party or his attorney[,] if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and reasons supporting his claim that notice should not be required.

The decision to grant a TRO is within the chancellor's discretion. *C.M. v. R.D.H. Sr.*, 947

---

[3] Despite the determination that Jackson was incompetent, the instant appeal was filed in her name.

So. 2d 1023, 1027 (¶11) (Miss. Ct. App. 2007). In this instance, the chancellor was concerned about Jackson's assets—specifically, that her checking accounts and certificates of deposit might be depleted or transferred to another bank. The chancellor issued the TRO in order to freeze Jackson's assets. And there was testimony that due to Jackson's age and health, she might be taken advantage of by Winston.

¶10. Reed stated that notice should not be required because of his concern about Jackson's assets being depleted. Reed claimed that after learning Jackson had executed a new power of attorney, he inquired about Jackson's bank accounts. According to Reed, he was informed that a substantial portion of a checking account, which he used to pay Jackson's expenses, was no longer listed in both his and Jackson's names. Reed also implied that Jackson had been taken from her home against her will by Winston and Guinn. We can find no abuse of discretion by the chancellor in granting the TRO without notice.

¶11. We also note that whether the TRO was properly granted does not affect whether Reed should have been appointed conservator. *See In re Conservatorship of Hester*, 989 So. 2d 986, 991 (¶18) (Miss. Ct. App. 2008).

## II. Appointment of Reed as Conservator

¶12. Jackson contends the chancellor erred by appointing Reed as her conservator. Jackson claims that: Reed did not meet the statutory requirements when filing his petition to appoint a conservator; Reed breached his fiduciary duty to her; she did not want Reed to be her conservator; and Reed was not competent to serve as her conservator.

¶13. In regard to the statutory argument, Jackson states that Reed failed to give notice to

Jackson's other relative pursuant to Mississippi Code Annotated section 93-13-253 (Rev. 2013). Section 93-13-253 states:

> Unless the court finds that the person for whom the conservator is to be appointed is competent and joins in the petition, the notice shall also be given to one (1) relative of the person for whom the conservator is to be appointed who is not the petitioner and who resides in Mississippi if such relative is within the third degree of kinship . . . .

In this instance Jackson had one other living relative within the third degree of kinship—Reed's brother, Johnny. Johnny was not given notice prior to the hearing, but he later voluntarily signed a waiver of notice stating he entered an appearance and submitted to the court's jurisdiction "the same as if [he] had been served with process herein and in accordance with the statute." Johnny had no objection to Reed's appointment as conservator for Jackson.

¶14. Although the failure to give notice can be reversible error,[4] in this instance we do not find the conservatorship to be invalid. *See In re Conservatorship of Brantley*, 865 So. 2d 1126, 1133 (¶23) (Miss. 2004) (next of kin did not receive notice but appeared at the hearing and did not object to the conservatorship); *In re Estate of Ellis*, 23 So. 3d 589, 599 (¶23) (Miss. Ct. App. 2009) (any defect in the notice requirement was cured by a conservatorship hearing).

¶15. Jackson's remaining claims concern Reed's qualifications to be her conservator. Jackson claims Reed breached his fiduciary duty under her power of attorney, which should have prevented his appointment as her conservator. And she alleges that Reed was

---

[4] *See Smith v. King*, 942 So. 2d 1290, 1291 (¶8) (Miss. 2006).

6

incompetent to serve as conservator due to his age—Reed was seventy-eight years old at the time of trial.

¶16.    The evidence presented during trial showed that Jackson's mental competency was diminished.  Two physicians determined that she could not manage her affairs, and one of these physicians diagnosed Jackson with dementia.  After hearing the evidence presented, including testimony from Jackson herself, the chancellor found it necessary to appoint a conservator.[5]  The chancellor determined that Reed was the appropriate choice as conservator since he had been acting on Jackson's behalf for several years.  The chancellor noted that Reed initiated an appraisal on Jackson's land in Arkansas, the result of which allowed Jackson to increase the rent paid to lease the land for farming purposes.  The evidence presented by Jackson claiming that Reed breached his fiduciary duty under her power of attorney is vague and speculative.  Chancellors have wide discretion in determining the appropriate person to be appointed as conservator. *Ravenstein v. Ravenstein*, 167 So. 3d 210, 220 (¶21) (Miss. 2014).  In this instance we cannot find any abuse of discretion by the chancellor in appointing Reed as conservator of Jackson's person and estate.

###    III.    Attorney's Fees

¶17.    Jackson's final issue on appeal concerns the chancellor's denial of attorney's fees. Jackson had requested Reed "be ordered to reimburse her all attorney's fees . . . incurred by

---

[5] The chancellor applied the management-competency test in reaching this conclusion. *See Ravenstein v. Ravenstein*, 167 So. 3d 210, 220 (¶20) (Miss. 2014).

her in defending this matter."[6]

¶18.    "Allowance of attorney['s] fees is largely within the broad discretion of the chancellor." *In re Conservatorship of Williams*, 724 So. 2d 1022, 1027 (¶12) (Miss. 1998) (citation omitted).  Finding no error by the chancellor in granting the TRO or in appointing Reed as conservator, we cannot find an abuse of discretion in the chancellor's decision to deny Jackson attorney's fees.  This issue is without merit.

¶19.    **THE JUDGMENT OF THE SUNFLOWER COUNTY CHANCERY COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.  IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[6] Robinson's chief concern appears to be that Jackson has failed to pay her attorney's fees.